# IN THE MATTER OF LUIS DAVILA CARBALLO, Bankrupt.

---

In Bankruptcy, No. 29.

OPINION OF THE COURT ON CERTIFICATE FROM REFEREE.

1. Chattel mortgages, as the same are understood in the different states of the Union, are unknown to the law of Porto Rico, and constitute no lien under the national bankruptcy act.

2. Such a mortgage, given to secure an antecedent debt, is not one given "for a present consideration," under said act.

3. A fee of $500 to bankrupt's attorney is excessive when the total value of estate is only $810, and the attorney may be ordered to return the excess over a reasonable fee.

Filed September 15, 1908.

Matter of Carballo.

*Mr. Frank Antonsanti,* attorney for bankrupt.

*Mr. Miguel Olmedo,* attorney for Villar & Company, creditor.

*Mr. Joseph Anderson, Jr.,* attorney for Frank Antonsanti.

RODEY, Judge, delivered the following opinion:

This is a case of voluntary bankruptcy. The petition and schedules were filed December 11, 1907, and the order of adjudication was entered on the 18th day of that month. The matter at first was in the hands of A. B. Crosas, Esq., referee in bankruptcy, who carried it forward until practically everything necessary in the case was done save to order the sale of the property and distribute the proceeds. Thereafter, Mr. Crosas being otherwise engaged, on proper application made therefor, the cause was transferred to another referee, Robert H. Todd, Esq., who ordered the sale of the property, and later, on May 7, 1908, ordered the payment of a fee of $500 to the attorney for the bankrupt, which was done. Later, in August, 1908, the attorneys for Villar & Company, one of the creditors, filed a motion before the referee for a holding that their account had priority, and was a lien upon the proceeds of the property referred to in an alleged mortgage which they had filed with the referee at the first meeting of creditors, but which had not been passed upon. They afterwards amended this motion to include an objection to the payment of the attorney's fee, which had already been paid, as unreasonable and illegal. The referee thereupon certified the issue thus raised to the court, and counsel for the respective parties filed briefs in support of their views.

Matter of Carballo.

The facts are about as follows: The bankrupt had been doing a small business at the town of Caguas, Porto Rico, from about 1904 on to the date of his petition in bankruptcy; first, as a small hardware merchant, next, as a retailer of liquors, and lastly, as the keeper of a stationery store. During this time he became indebted to many people in small sums, and, among others, was indebted to Villar & Company in the sum of $405. During this same time the bankrupt purchased whatever improvements were upon two small lots of ground at said town, belonging to others, and, later, partly constructed, but did not quite finish, a couple of houses thereon. The lots, as it appears, belonged to the municipality of Caguas, he being a mere tenant at will thereon as to his houses.

On the 12th of March, 1907, the bankrupt, in order to secure the debt he had owed Villar & Company for some time previous, executed a public instrument to them before a notary, and in that way endeavored to give them a mortgage upon one of these houses. Eleven days thereafter, Villar & Company attempted to record this alleged mortgage in the proper registry office for that district, but registration was refused for the reason that the title to the real estate or ground itself was not then recorded at all. Thereupon, the registrar put of record, as is usual under the local mortgage law, a cautionary notice, specifically stating that such notice was to have effect for 120 days, which, it is admitted, is the life of such a notice under the amended law of Porto Rico. This cautionary notice, as it will be seen, died a death of limitation on or about the 23d day of July, 1907, following, and which date was, as can be seen, more than four months previous to the filing of the voluntary petition in bankruptcy on December 11th of that year.

Matter of Carballo.

The referee failed to pass upon the question, or, if he did,. Villar & Company are appealing from it, as to whether or not this so-called mortgage was such a lien under the bankruptcy act as would give it priority as against all other creditors of the bankrupt.

The situation is peculiar, and the result of the holding may be far-reaching. A chattel mortgage, in the sense in which such an instrument is understood in the several states of the Union,. is said to be unknown to the civil law generally, and to the law as in force in Porto Rico. The question, therefore, is not easy,. when we are asked to state whether or not this lien exists in the sense of the national bankruptcy act. After giving it due consideration, we are constrained to hold that it does not. Section 67d of the bankruptcy act respects liens on property, "which have been recorded according to law, if record thereof was neces-- sary in order to impart notice." [30 Stat. at L. 564, chap. 541, U. S. Comp. Stat. 1901, p. 3449.] Under the local law, as we see it, the cautionary notice put in the registry was binding upon no person after the 120 days during which it had legal life; and, moreover, the bankrupt, it appears, was without power to make this so-called mortgage recordable, because the title to the land on which his houses were situated was in the municipality of Caguas. He wholly failed, within that time, to obtain any title to the land that would enable him to mortgage it, and, as a chattel mortgage of the house alone, in this sense, is not known to the local law, and could only be good as a mere contract, if at all, between the parties, we think it is not good as against creditors, especially when the main object of the bankruptcy act is to preserve the estate for all creditors alike. There is a further reason that, under the circumstances of this case, moves

Matter of Carballo.

us to this holding. This so-called mortgage was given for an antecedent debt long after the debt was due, and therefore was not, under the terms of § 67d of the bankruptcy act, aforesaid, made " for a present consideration," even though it was made much more than four months previous to the petition in bankruptcy.

The other point, as to the reasonableness of the fee paid to the attorney, is, we think, well taken. Although the bankrupt valued the house in his schedules at nearly $4,000, we ascertained from the parties and the record that it had in fact no such value, and it was sold at the time of the public sale for $490. The whole estate, although valued in the schedules at more than $5,000, realized, all told, but the sum of $810.42, and from an investigation we have made, it was not in fact worth much more than that. We have examined the attorney about the matter, and, while he did a lot of work for the bankrupt, which, in another sort of proceeding, would entitle him to the compensation he asks, still, we hold that a large portion of it was not service that he can legitimately charge against this estate or receive an allowance for. His claim that he has paid an associate $150 out of the money has no force, because, under the bankruptcy act, but one reasonable attorney's fee can be allowed. Ex parte O'Connell, 92 Fed. 889. It appears, however, that he did a lot of work, both for the bankrupt and for the trustee, with reference to suits then pending against the estate itself, that, under the decision last above cited, can properly be paid for in the way of an allowance direct to him, because his services resulted in special benefit to the estate.

Therefore an allowance of $250 is hereby made to him in that behalf, and, as he has already received $500, he is now ordered

Matter of Carballo.

to, within five days from the filing of this opinion and order, pay back to the trustee the sum of $250.

It appearing that Mr. Todd, the referee before whom the cause is now pending, is so engaged as not to be able to give further time to it, the cause will be, and hereby is, withdrawn from him, and is again referred to Andres B. Crosas, Esq., with instructions to add the sum of money thus to be received, to the small amount yet in the hands of the trustee, and cause the whole to be distributed to the creditors according to law, and the cause closed and finally reported to the court, as may be proper.